FILED

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

2017 OCT 10 PM 4: 24

US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

ANTHONY LORENTI, on behalf
of himself and all others similarly
situated,

      Plaintiff,

v.

GEICO INDEMNITY
COMPANY,

      Defendant.

Case No.: 6:17-cv-1755-ORL-
18-DCI

## PLAINTIFF'S CLASS ACTION COMPLAINT FOR DAMAGES,
## INJUNCTIVE RELIEF, AND DEMAND FOR JURY TRIAL

Named Plaintiff Anthony Lorenti ("Plaintiff") on behalf of himself and all

others similarly situated, files this Nationwide and Florida Class Action

Complaint against GEICO Indemnity Company ("GEICO Indemnity" or

"Defendant"), and asserts upon personal knowledge as to his own acts and status,

and upon information and belief as to all other matters, the following allegations:

### I.    NATURE OF THE ACTION

1.

This is a Nationwide and Florida Class Action lawsuit by Plaintiff, who

was an insured under Defendant GEICO Indemnity's policy of insurance (the

- 1 -

"Policy") for private passenger auto ("PPA") physical damage. The GEICO Indemnity policy form covering Plaintiff for PPA physical damage (known as form A-30FL (03-11)) is attached as Exhibit A.

2.

The Policy requires payment on first-party total loss claims of Actual Cash Value ("ACV"), which is defined by the Policy as "the **replacement cost** of the auto or property less depreciation or betterment." (Ex. A, Policy form, at 12) (emphasis added.)

3.

Defendant pays sales tax on first-party total loss PPA physical damage claims ("first-party total loss claims") because sales tax is part of ACV. This is because sales tax is a mandatory fee involved with the purchase of any vehicle, and therefore part of the replacement cost of any vehicle.

4.

By contrast, Defendant does not pay title and license plate transfer fees on first-party total loss claims. This violates both Defendant's contract with Plaintiff and applicable state law. Just like sales tax, title and license plate transfer fees are mandatory fees involved with the purchase of any vehicle, and therefore part of the replacement cost of any vehicle.

- 2 -

5.

This lawsuit is brought on behalf of Plaintiff and all other first-party total loss insureds who were not paid title and license plate transfer fees as part of the ACV of their first-party total loss claims.

## II.    JURISDICTION AND VENUE

6.

This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(d)(2). This is a class action in which the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. Plaintiff (a Florida citizen) is a citizen of a state different from Defendant, and there are more than 100 members of the Nationwide and Florida Classes sought to be certified.

7.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim, including the claims adjustment, occurred in this district and division.

## III.    THE PARTIES

8.

Plaintiff Anthony Lorenti is an adult who, at all relevant times, resided in

and was domiciled in St. Johns County, Florida.

9.

Defendant GEICO Indemnity is an insurance company incorporated in Maryland. Its principal place of business is 5260 Western Avenue, Chevy Chase, MD, 20815. Its Florida registered agent is Chief Financial Officer, 200 East Gaines Street, Tallahassee, Florida, 32301.

10.

GEICO Indemnity is owned by Government Employees Insurance Company ("GEICO"). Although GEICO is a private company that does not provide separate results of affiliates such as GEICO Indemnity, GEICO earned underwriting profits from its property and casualty insurers (including GEICO Indemnity) of $462 million on $26.3 billion of premiums in 2016. (*See* Berkshire Hathaway, Inc. 2016 Annual Report, at 79).

11.

GEICO Indemnity is the fifth largest PPA insurer in Florida, with total annual Florida premiums of over $950 million.

12.

Upon information and belief (and assuming the same rate of profitability), GEICO Indemnity earned approximately $16.69 million in 2016 from its Florida

- 4 -

PPA insurance.

## IV.   FACTUAL ALLEGATIONS

### A. Plaintiff Was Issued a Form A-30FL (03-11) Policy.

13.

Plaintiff entered a policy agreement to be insured by GEICO Indemnity under policy form A-30FL (03-11) with a policy period of May 20, 2017 through November 20, 2017 (the "Policy").   The Policy provided physical damage coverage for his 2004 Jeep Liberty Sport 4WD, VIN 1J4GL48K54W136110 (the "Insured Vehicle").

14.

GEICO Indemnity has issued Florida PPA physical damage policies under policy form A-30FL (03-11) since August 2011.

15.

Upon information and belief, Florida policy form A-30FL (03-11) is based on, and has the same material terms as, GEICO Indemnity's policy form A-30.

16.

Upon information and belief, GEICO Indemnity has issued PPA physical damage policies under policy form A-30 nationwide since August 2011.  (*See, e.g.*, Composite Ex. B, Form A-30CO, Form A-30MO, Form A-30NV.)

17.

Other GEICO affiliates also issued PPA physical damage policies nationwide (including in Florida) under policy form A-30 and policy form A-70 since August 2011. Policy forms A-30 and A-70 have identical material terms relating to the physical damage coverage at issue here.

**B. The Policy Required Defendant To Pay The Replacement Cost of the Totaled Automobile.**

18.

The Policy provided comprehensive and collision coverage with a coverage limit of ACV and a $1,000.00 deductible.

The Policy defines ACV as follows:

1. "***Actual cash value*** is the replacement cost of the auto or property less ***depreciation*** or ***betterment***."
   a. "***Betterment*** is improvement of the auto or property to a value greater than its pre-loss condition."
   b. "***Depreciation*** means a decrease or loss in value to the auto or property because of use, disuse, physical wear and tear, age, outdatedness, or other causes."

(Ex. A, Policy form at 12).[1]

19.

The Policy provides as follows relating to PPA physical damage

---

[1] All bold and/or italics are in the original Policy.

comprehensive and collision coverage:

    A.    Comprehensive Coverage (excluding **collision**).

        1. We will pay for each *loss*, less the applicable deductible, caused other than by *collision* to the *owned* or *non-owned auto*. This includes glass breakage.
No deductible will apply to *loss* to windshield glass.
At the option of the *insured*, breakage of glass caused by *collision* may be paid under the Collision coverage, if included in the policy.

        2. We will pay, up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to:
        a) Fire;
        b) Lightning;
        c) Flood;
        d) Falling objects;
        e) Earthquake;
        f) Explosion; or
        g) Theft of the entire automobile.
The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

        3. *Losses* arising out of a single occurrence shall be subject to no more than one deductible.

    B.    Collision Coverage.

        1. We will pay for *collision loss* to the *owned auto* for the amount of each *loss* less the applicable deductible and to the *non-owned auto* for the amount of each *loss* less the applicable deductible when driven by *you* or a *relative*.

        2. We will pay up to $200 per occurrence, less the applicable deductible, for *loss* to personal effects due to a *collision*. The property must be owned by *you* or a *relative*, and must be in or upon an *owned auto*.

        3. *Losses* involving one *owned auto*, arising out of a single occurrence shall be subject to no more than one deductible.

    4. If more than one *owned auto* or *non-owned auto* is involved in a *collision loss*, any deductible will apply separately to each *owned auto* or *non-owned auto*.

(*Id.* at 13-14.)

20.

The Policy defines **Loss** as follows:

    1. *Loss* means direct and accidental loss of or damage to:
        a) An *owned* or *non-owned* auto, including its equipment; or
        b) Other property insured under this section.

(*Id.* at 13.)    The Policy definition of **Loss** applies to both collision and comprehensive coverage.

21.

There is no difference, for purposes of the duty to pay ACV on a first-party total loss claim, between a collision total loss claim and a comprehensive total loss claim.

22.

The Policy provides the following limit of liability for PPA physical damage coverage:

**LIMIT OF LIABILITY**

The limit of our liability for *loss*:

    1. Is the ***actual cash value*** of the property at the time of the *loss*;

2. Will not exceed the prevailing competitive price to repair or replace the property at the time of *loss*, or any of its parts, including parts from non-original equipment manufacturers, with other of like kind and quality and will not include compensation for any diminution of value that is claimed to result from the *loss*. Although *you* have the right to choose any repair facility or location, the limit of liability for repair or replacement of such property is the prevailing competitive price which is the price we can secure from a competent and conveniently located repair facility. At *your* request, we will identify a repair facility that will perform the repairs or replacement at the prevailing competitive price;

3. To personal effects arising out of one occurrence is $200;

4. To a *trailer* not owned by *you* is $500;

5. For *custom parts or equipment* is limited to the *actual cash value* of the *custom parts or equipment*, not to exceed the *actual cash value* of the vehicle.

   *Actual cash value* or **betterment** of property will be determined at the time of the loss and will include an adjustment for **depreciation/betterment** and for the physical condition of the property.

6. If this policy covers two or more autos or trailers any deductibles will apply separately to each.

(*Id*. at 14-15).

23.

The Policy does not explicitly define "total loss."

24.

The Policy does not explicitly reference sales tax, title fees, or license plate transfer fees.

## C. The Replacement Cost For A Total Loss Includes Applicable Taxes, Title Fees, and License Plate Transfer Fees.

25.

Although the Policy does not explicitly define a total loss, the limit of coverage provided is the ACV. The Policy therefore requires payment of ACV for a total loss.

26.

GEICO Indemnity, consistent with industry standard, explains to insureds that they will receive payment of ACV (minus deductible) upon suffering a total loss, and that this value includes applicable fees and taxes. (*See* GEICO Claims Center publication: "Car Is Totaled: Learn About The Total Loss Process" (www.geico.com/claims/claimsprocess/total-loss-process/) (last visited 10/5/17) ("If your policy covers a total loss, GEICO will: pay the actual cash value of the vehicle (plus applicable state fees and taxes) less any deductible. . . .").

27.

GEICO Indemnity's public statements that ACV includes applicable fees and taxes is consistent with the reasonable expectation of an insured. An insured

- 10 -

pays for the maximum coverage under a policy (in this case ACV) with the expectation of receiving such maximum coverage when the insured suffers the maximum loss (a total loss).

28.

The Policy defines ACV as "replacement cost of the auto or property less *depreciation* or *betterment*." (Ex. A, Policy form at 12.)  Sales tax, title fees, and license plate transfer fees are each mandatory applicable fees involved with the purchase of any vehicle under Florida law.

29.

Likewise, policy form A-30 defines ACV as "replacement cost of the auto or property less *depreciation* or *betterment*." (*See, e.g.*, Composite Ex. B, Form A-30CO at 8, Form A-30MO at 8, Form A-30NV at 8).  On information and belief, each of the fifty states imposes taxes, title fees, and/or license plate transfer fees relating to the replacement of a private passenger vehicle.

30.

As a consequence, under the law in every state (including Florida), an insured vehicle cannot be replaced without payment of applicable taxes, title fees,

and/or license plate transfer fees. These costs are, quite literally, part of the replacement cost of a totaled vehicle.

31.

State laws, including Florida law, require the payment of applicable taxes before any vehicle is permitted to be titled and operated. *See, e.g.,* Fla. Stat. Ann. § 212.05.

32.

State laws, including Florida law, also require that all vehicles operated on state roadways have the title of the vehicle registered with the State. *See, e.g.,* Fla. Stat. Ann. § 320.02 ("every owner or person in charge of a motor vehicle that is operated or driven on the roads of this state shall register the vehicle in this state."). The cost to transfer title to a replacement vehicle is a minimum of $75.25.

33.

In addition, state laws, including Florida law, require that all vehicles operated on Florida roads have a registration license plate. *See, e.g.,* Fla. Stat.

Ann. § 320.0609. The cost to transfer a license plate to a replacement vehicle is a minimum of $7.35.

### D. GEICO Told the Florida Office of Insurance Regulation, and Continues to Tell the Public, That It Pays Title Fees on Total Loss Claims.

34.

In 2013, GEICO responded to the Florida Office of Insurance Regulation ("FOIR")[2] relating to a complaint about GEICO's total loss claims handling. In this response, GEICO stated that GEICO pays sales tax and title fees because "these are mandatory fees involved with the purchase of the vehicle."

35.

GEICO's statement to FOIR was partially true, and partially false. It was and is true that taxes and title fees are mandatory fees involved with the purchase of any vehicle. However, it was and is false that GEICO paid title fees on behalf of their total loss insureds as required by contract and state law. GEICO, including GEICO Indemnity, has maintained a practice for five (5) years prior to

---

[2] The communication from GEICO incorrectly was addressed to the Florida Department of Insurance. The proper entity at the time was the Florida Office of Insurance Regulation.

the filing of this Complaint of paying taxes but *not* paying title fees and license plate transfer fees.

36.

GEICO maintains a Claims Center and claims information website for the purpose of informing insureds of their rights when they suffer a total loss. Through this website, GEICO and its affiliates, including GEICO Indemnity, also have made, and continue to make, false statements about coverage for title fees on total losses to the general public.

37.

In the GEICO Claims Center website publication, "Car Is Totaled: Learn About The Total Loss Process" (www.geico.com/claims/claimsprocess/total-loss-process/) (last visited 10/5/17), GEICO states: "If your policy covers a total loss, GEICO will: pay the actual cash value of the vehicle (plus applicable state fees and taxes) less any deductible."

38.

Taxes, title fees, and license plate transfer fees are "applicable" to the replacement of any Florida vehicle because a vehicle *cannot* be replaced without

payment of taxes, title fees, and license plate transfer fees.

39.

Contrary to the statement on its website and the statement to FOIR, GEICO, including its affiliate GEICO Indemnity, does not pay the applicable state fees and taxes to its total loss insureds throughout the country (including Florida).

### E. Plaintiff Suffered a Total Loss and Was Not Paid Title Fees or License Plate Transfer Fees As Required by the Policy and State Law.

40.

On or about June 28, 2017, Plaintiff Insured Vehicle was involved in a collision that rendered the vehicle a total loss.

41.

Plaintiff was entitled to recovery of ACV for his total loss under the Policy with GEICO Indemnity.

42.

GEICO Indemnity, through its Volusia County adjuster Jayson Brown, and at its office located in this division at 1320 Tamokafarms Rd, Daytona Beach, Florida 32124, issued an estimate of record finding that the Insured Vehicle was a total loss. (Ex. C, Estimate of Record.)

43.

GEICO Indemnity paid Plaintiff a total loss settlement of $2,145.80. (Ex. D, Payment Record.)

44.

GEICO Indemnity, through its adjuster Jayson Brown, provided a Total Loss Settlement Explanation ("Settlement Explanation") showing how the settlement was calculated:

| | |
|---|---|
| Base Value | $2,889.00 |
| Condition Adjustment | $51.00 |
| Pre Tax Adjustment | $0.00 |
| Tax | $205.80 |
| Total Value | $3,145.80 |
| State and Local Regulatory Fees | $0.00 |
| Post Tax Adjustment | $0.00 |
| Less Deductible | $1,000.00 |
| Less Percent Negligent    0% | $0.00 |
| Less Retention Amount | $0.00 |
| Net Settlement Amount | $2,145.80 |
| Towing Charges | $0.00 |
| Storage Charges | $0.00 |

(Ex. E, Settlement Explanation.)

45.

The Settlement Explanation shows that GEICO Indemnity paid the sales tax on the total loss vehicle, but did not pay State and Local Regulatory Fees, such as title and license plate transfer fees.

46.

GEICO Indemnity thus failed to pay Plaintiff the full ACV on his claim. Plaintiff has been damaged in the minimum amount of $82.60 ($75.25 in minimum title transfer fees, and minimum $7.35 in license plate transfer fees) by GEICO Indemnity's failure to pay these replacement costs.

47.

Upon information and belief, GEICO Indemnity has failed to pay title fees and license plate transfer fees to hundreds of thousands of first-party total loss claimants around the country (including tens of thousands of Florida first-party total loss claimants), even though these fees are required by contract and applicable state law.

## V. JURISDICTIONAL AMOUNT IS MET

48.

The amount in controversy in this lawsuit relating to Geico Indemnity's failure to pay title fees and license plate transfer fees is over $5 million for the Florida Class alone, and substantially over $5 million for the much larger Nationwide Class.

**A. The Florida Class Amount in Controversy Exceeds $5 Million.**

49.

Over 100,000 GEICO Indemnity Florida PPA insureds were paid on first-party total loss physical damages claims during the period five (5) years before the filing of this lawsuit and the present, but were not paid title fees and license plate transfer fees.

50.

In 2015, GEICO Indemnity wrote approximately $967 million in PPA premium in the state of Florida. (*See* FOIR 2016 Annual Report.)  Of that amount, approximately $719 million (74.36%) was paid out on PPA claims. (*See* National Association of Insurance Commissioners ("NAIC") PPA Market Share Reporting, 2015).  Of the approximate $719 million in paid claims, approximately $334 million (46.5%) was paid for physical damage. (*See* Insurance Information Institute, Facts & Statistics, PPA Ins. Losses, 2006-2015 (hereafter "III Facts & Statistics") (www.iii.org/fact-statistic/facts-statistics-

auto-insurance) (last visited 10/5/17).[3, 4]

51.

The average loss paid on a physical damage claim is approximately $2,828.

*Id.*[5] Based on this average loss per claim, GEICO Indemnity had approximately

---

[3] The III Facts & Statistics identify PPA insurance losses per 100 car years on based on claim frequency and severity of loss (amount paid for claim) for liability (bodily injury and property damage), and physical damage (collision and comprehensive). According to III Facts & Statistics, 46.5% of all PPA losses are attributable to physical damage (as opposed to bodily injury and property damage liability). III Facts & Statistics show that 2015 liability losses nationwide per 100 car years are $28,520.73, which is the sum of bodily injury losses ($15,491.84) and property damage losses ($13,028.89). III Facts & Statistics also show that historical physical damage losses per 100 car years are $24,829.33, which is the sum of historical collision losses ($20,267.50) and comprehensive losses ($4,561.83). Historical losses per 100 car years total $53,350.06, which is the sum of liability losses ($28,520.73) and physical damage losses ($24,824.33). Physical damage losses are 46.5% (nationwide) of all claims ($24,829.33/$53,350.06=.465). Note: a car year is equal to 365 days of insured coverage for one vehicle.

[4] The Insurance Information Institute has been cited and relied on by numerous federal courts for insurance statistics. *Calderon v. GEICO Gen. Ins. Co.*, 809 F.3d 111, 117 n3 (4th Cir. 2015), *cert. denied,* 137 S. Ct. 53 (2016); *Thompson v. State Farm Fire and Cas. Co.*, 5:14-CV-32 (MTT), 2016 WL 2930958, at *1 n2 (M.D. Ga. May 19, 2016); *Caliber One Indem. Co. v. Wade Cook Fin. Corp.*, 491 F.3d 1079, 1086 (9th Cir. 2007). GEICO cited Insurance Information Institute as a provider of reliable statistics in briefing to the Fourth Circuit in *Calderon. See* Calderon, et al. v. GEICO et al., Nos. 13-2096, 13-2149, US Court of Appeals for the Fourth Circuit (Doc. 21).

[5] *See* III Facts & Statistics. For 2015, III Facts & Statistics shows historical collision losses per 100 car years is $20,267.50, based on an average claim frequency per 100 car years of 6.05 and an average loss of $3,350 ($3,350*6.05=$20,267.50). The historical comprehensive loss per 100 car years is $4,561.83 based on an average claim frequency per 100 car years of 2.73 and an average loss of $1,671 ($1,671*2.73=$4,561.83). Total collision and comprehensive losses per 100 car years are thus 24,829.33 (20,267.50 + 4,561.83). To find the average claim loss, one divides the total loss (24,829.33) by the total claims (6.05 + 2.73): $24,829.33 / (6.05+2.73) = $2,827.94.

118,105 physical damage claims in 2015.[6]  Total loss claims are approximately

18% of all physical damage claims.  (*See* CCC Information Services, Inc.,

"What's Driving Total Loss Frequency?" (www.cccis.com/whats-driving-total-

loss-frequency/) (last visited 10/5/17) (18% estimated based on total loss

percentage of all vehicle ages from Q4 2014 to Q3 2015, *see* chart titled *% of*

*Claims Flagged Total Loss by Vehicle Age*).[7]  GEICO Indemnity therefore had

approximately 21,259 total loss claims in 2015.[8]  GEICO Indemnity underpaid

each claimant a minimum of $82.60 per claim.  The underpayment (damages) for

the Florida Class therefore was approximately $1.76 million in 2015 alone.[9]

52.

Plaintiff calculates the approximate damages for the Florida Class for years

other than 2015 by extrapolating from the 2015 premium written and the $1.76

million damage amount.  Assuming the same ratio of premium written and

---

[6] $334 million (total paid for physical damage claims) / $2,828 (average physical damage claim amount) = 118,105 (total physical damage claims).

[7] CCC Information Services is one of the largest PPA total loss physical damage valuation providers. CCC Information Services provides total loss valuation software and services for GEICO and other insurers, such as USAA. CCC claims to have "the most claims data in the industry." *See* www.cccis.com/about-ccc/ (last visited 10/05/17).

[8] 118,105 * 18% = 21,259.

[9] 21,259 * $82.60 = $1,755,993.40.

claimed underpayment of title fees and license plate transfer fees, the following table shows the damages for the Florida Class for the 5-year limitations period.

| Year | PPA Premium Written[10] | Number of Total Loss Claims | Total Loss Claim Underpayment for Failure to Pay Fees (damages)[11] |
|---|---|---|---|
| 2017 | $1,259,000,000 | 20,610 | $1.70 million (through 9/30/17) |
| 2016 | $1,103,000,000 | 24,249 | $2.00 million |
| 2015 | $967,000,000 | 21,259 | $1.76 million |
| 2014 | $812,000,000 | 17,851 | $1.47 million |
| 2013 | $743,000,000 | 16,334 | $1.35 million |
| 2012 | $664,000,000 | 3,649 | $.301 million (starting 10/1/12) |
| Total | $5,548,000,000 | 103,954 | $ 8.58 million |

53.

Total damages in controversy for the approximately 103,954 total loss claims over the 5-year period are thus approximately $8.58 million.

---

[10] The 2016 and 2017 premium is estimated by extending Geico Indemnity's premium compound growth from 2013-2015 (14.08%) through to 2017. Written premium amounts (rounded) for each year 2012-2015 are from the FOIR Annual Reports, 2013-2016.

[11] For the year 2017, number of total loss claims and damages are only calculated through the first three quarters of the year. For 2012, total loss claims and damages are calculated only for the last quarter of the year due to the statute of limitations.

54.

The above damages do not include the value of injunctive relief, which should be considered when determining the amount in controversy. *See Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1268 (11th Cir. 2000). Just two years of injunctive and declaratory relief would have a value of over $4 million ($2 million x 2= $4 million).

55.

The $8.58 million in estimated damages and $4 million in injunctive relief do not include attorneys' fees.   The Eleventh Circuit has suggested a "benchmark" for attorneys' fees awards in class actions that ranges from 20% to 30% of the class recovery. *See Waters v. Int'l Precious Metals Corp.,* 190 F.3d 1291, 1294 (11th Cir. 1999). Attorneys' fees potentially recoverable under fee-shifting statutes are included in determining the amount in controversy for purposes of federal jurisdiction. *Morrison,* 228 F.3d at 1265 (explaining that attorneys' fees under Fla. Stat. 627.428 are includable in amount in controversy because "[w]hen a statute authorizes the recovery of attorney's fees, a reasonable amount of those fees is included in the amount in controversy.   Adding a conservative 20% in attorneys' fees, the amount in controversy is $10.73 million (not including injunctive relief), and $15.73 million (including the value of two

years of injunctive relief in the fee calculation). The above calculations do not include pre-judgment interest, which increases the amount in controversy.

**B. Nationwide Class Amount in Controversy Exceeds $5 Million.**

56.

GEICO affiliated insurers, including GEICO Indemnity, together have the second largest PPA market share in the United States, with over $25 billion in PPA premiums written.  (*See* NAIC, Market Share, 2016.)[12]

57.

Upon information and belief, GEICO Indemnity writes insurance for PPA physical damage in all of the fifty (50) states, and GEICO Indemnity insures in the fifty states more than three times the number of PPA that it insures in Florida.

58.

The Nationwide Class therefore is substantially larger than the Florida Class, with amounts in controversy substantially exceeding the $5 million jurisdiction threshold.

---

[12] Located at http://www.naic.org/documents/web_market_share_170301_2016_property_lob.pdf?1507219079935 (last visited 10/05/17)

## VI.   CLASS ACTION ALLEGATIONS

### A. The Nationwide Class.

59.

Pursuant to Fed. R. Civ. P. 23, Plaintiff asserts claims for breach of contract, declaratory judgment, and injunctive relief on behalf of a nationwide class, as defined as follows:

> All United States residents insured for PPA physical damage by GEICO Indemnity who suffered a first-party total loss of a covered vehicle at any time during the applicable period of limitations prior to the filing of this lawsuit, whose claims were adjusted by the Defendant as a total loss claim, whose claims resulted in payment by the Defendant of a covered claim, and who were not paid title fees and/or license plate transfer fees.

60.

Excluded from the Nationwide Class are officers and employees of GEICO, GEICO Indemnity, and all of their affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

61.

The Nationwide Class meets the criteria for certification under Fed. R. Civ.
P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

**Fed. R. Civ. P. 23(a).**

62.

**Numerosity**. The members of the Class are so numerous that separate
joinder of each member is impracticable. Fed. R. Civ. P. 23(a)(1). GEICO
Indemnity has adjusted and made coverage payments on 80,000 total loss claims
in Florida, and, upon information and belief, over 500,000 total loss claims
nationwide during the applicable periods of limitation. Upon information and
belief there are over 100,000 members of the Nationwide Class.

63.

The members of the Nationwide Class are easily ascertainable and readily
identifiable from information and records in Defendant's possession, control, or
custody. Upon information and belief, GEICO Indemnity maintains records of
all total loss claims made by its insureds and paid by GEICO Indemnity. These
records include a Total Loss Settlement Explanation that itemizes what categories
of costs were and were not paid as part of ACV. These categories include taxes,
title fees, and license plate transfer fees.

64.

**Commonality**.  Common questions of law and fact exist and predominate over any question affecting only individual Class Members.  Fed. R. Civ. P. 23(a)(2).  Because the central issues in this case turn on the interpretation of policy form A-30 – an insurance contract that is common to all Class Members and Defendant – this case is especially well-suited to class adjudication. Defendant and all members of the Class are bound by the same material terms of policy form A-30, and the central issues in the case all involve interpretation of the same material and controlling terms.  The common questions include:

a.    Whether title fees are mandatory fees applicable to purchasing a vehicle;

b.    Whether license plate transfer fees are mandatory fees applicable to purchasing a vehicle;

c.    Whether "replacement cost for an auto" includes title fees;

d.    Whether "replacement cost for an auto" includes license plate transfer fees;

e.    Whether Defendant is required under the policy form A-30 to pay title fees to first-party total loss claimants;

f.    Whether Defendant is required under the policy form A-30 to pay license plate transfer fees to first-party total loss claimants;

g.    Whether Defendant breached its contractual duties under the policy form A-30 to pay title fees to first-party total loss claimants; and

h.    Whether Defendant breached its contractual duties under the policy form A-30 to pay license plate transfer fees to first-party total loss claimants.

65.

**Typicality**.  Plaintiff's claims and defenses are typical of the claims of the Class.  Fed. R. Civ. P. 23(a)(3).  Plaintiff and Class Members were injured through GEICO Indemnity's uniform misconduct and their legal claims arise from the same core GEICO Indemnity practices, namely, the failure to pay full ACV, including title fees and/or license plate transfer fees, for first-party total loss claims under PPA physical damage policies issued under Form A-30. Plaintiff's claims are based upon the same legal theories as those of the Class Members.  Plaintiff suffered the same harm as all the other Class Members:  the cost of title fees and/or license plate transfer fees that Defendant failed to pay its insureds.

66.

At its core, this is a breach of contract claim involving identical issues on identical (in all relevant respects) contracts across the Class. There are no material differences among the state laws governing breach of contract pertaining to the simple contract interpretation issue presented here. Defendant's breach of contract can be proven with common proof.

67.

This Circuit has recognized that in such circumstances the definition of "breach" does not differ from state to state:

> Judge Marcus once held, "Whether [a] contract[] . . . has been breached is a pure and simple question of contract interpretation which should not vary from state to state." *Indianer v. Franklin Life Ins. Co.*, 113 F.R.D. 395, 607 (S.D. Fla. 1986), *overruled in part on other grounds by Ericsson GE Mobile Communs., Inc. v. Motorola Communs. & Elecs., Inc.*, 120 F.3d 216, 219 n. 12 (11th Cir. 1997); *accord Leszczynski v. Allianz Ins.*, 176 F.R.D. 659, 672 (S.D. Fla. 1997); *see also Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 694 (N.D. Ga. 1983) ("The application of various state laws would not be a bar where, as here, the general policies underlying common law rules of contract interpretation tend to be uniform."). Based on "genius, general knowledge and previous information," [citation omitted], we are inclined to agree. ***A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey.*** *See Black's Law Dictionary* 200 (8th ed. 2004) (defining "breach of contact" as "[v]iolation of a contractual obligation by failing to perform one's own promise").

*Klay v. Humana, Inc.* 382 F.3d 1241, 1262 (11th Cir. 2004) (emphasis added),
*abrogated on other grounds by Bridge v. Phoenix Bond & Indemnity Co.*, 553
U.S. 639 (2008).

68.

**Adequacy**.  Plaintiff is an adequate representative of the proposed class
because his interests do not conflict with the interests of the Class Members he
seeks to represent, and Plaintiff will fairly and adequately protect the interests of
the Class.   Fed. R. Civ. P. 23(a)(4).   Plaintiff's counsel are experienced in
litigating consumer class actions and complex disputes, and have specific
experience successfully litigating similar disputes as class counsel.  Plaintiff's
counsel do not have any conflict with the interests of the class.

69.

**Superiority**.  A class action is superior to all other available methods of
fairly and efficiently adjudicating this dispute.  The injury sustained by each
Class Member, while meaningful on an individual basis, is not of such magnitude
that it is economically feasible to prosecute individual actions against GEICO
Indemnity.   Even if it were economically feasible, requiring hundreds of
thousands of injured plaintiffs to file individual suits would impose an undue
burden on the court system and almost certainly lead to inconsistent judgments.

By contrast, class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**Fed. R. Civ. P. 23(b)(1).**

70.

Plaintiff's claims are maintainable on behalf of the Class pursuant to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate claims or defenses by or against individual Class Members would create a risk of: (A) inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for the party opposing the Class; and (B) adjudications with respect to individual Class Members that, as a practical matter, would be dispositive of the interests of other Class Members who are not parties to the adjudications, or would substantially impair or impede their ability to protect their interests.

71.

The relevant policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those policy provisions for each Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Class Members

because, without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

72.

Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Class Members who are not parties to individual adjudications having their rights impaired or impeded without notice or adequate representation.

**Fed. R. Civ. P. 23(b)(2).**

73.

Plaintiff's claims also are maintainable on behalf of the Class pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and refused to act, on grounds that apply generally to all the Class Members, thereby making final injunctive relief and declaratory relief appropriate with respect to the Class as a whole. On information and belief, Defendant's practice of failing to pay full ACV, including title fees and license plate transfer fees, for first-party total loss claims under PPA physical damage policies issued under Form A-30 applies generally to all Class Members and is ongoing. Declaratory judgment regarding this practice, and injunctive relief to stop this practice, is appropriate.

**Fed. R. Civ. P. 23(b)(3).**

74.

There are questions of law and fact common to the Nationwide Class that under Fed. R. Civ P. 23(b)(3) predominate over any questions solely affecting individual members of the Nationwide Class, including but not limited to those common questions of law and fact identified in paragraph 64(a-h). A class action is superior to other available methods for fairly and efficiently adjudicating the controversy for the reasons identified in paragraph 69.

**Fed. R. Civ. P. 23(c)(4).**

75.

Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to, the same issues identified in paragraph 64(a-h).

**B. The Florida Subclass.**

76.

Pursuant to Fed. R. Civ. P. 23, Plaintiff asserts claims for breach of contract, declaratory judgment, and injunctive relief on behalf of a Florida Class, as defined as follows:

> All Florida residents insured for PPA physical damage by GEICO Indemnity who suffered a first-party total loss of a covered vehicle at any time during the five (5) years prior to the filing of this lawsuit, whose claims were adjusted by a Defendant as a total loss claim, whose claims resulted in payment by a Defendant of a covered claim, and who were not paid title fees and/or license plate transfer fees.

77.

Excluded from the Florida Class are all officers and employees of GEICO, GEICO Indemnity, and all of their affiliates, parents, and subsidiaries; all persons who make a timely election to be excluded from the Class; government entities; and the judges to whom this case is assigned and their immediate family and court staff.

78.

The Florida Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(1), (b)(2), (b)(3), and (c)(4).

**Fed. R. Civ. P. 23(a).**

79.

**Numerosity**.  The members of the Florida Class are so numerous that separate joinder of each member is impracticable.  Fed. R. Civ. P. 23(a)(1).  GEICO Indemnity is the fifth largest PPA insurer in the state of Florida, collecting over $967 million in premiums in 2015.  There were approximately 16,800 total loss claims in Florida in 2015 alone.  On information and belief, there are over 50,000 members of the Florida Class.

80.

The members of the Florida Class are easily ascertainable and readily identifiable from information and records in Defendant's possession, control, or custody.  Upon information and belief, GEICO Indemnity maintains records of all total loss claims made by its insureds and paid by GEICO Indemnity.  These records include a Total Loss Settlement Explanation that itemizes what categories of costs were and were not paid as part of ACV.  These categories include taxes, title fees, and license plate transfer fees.

81.

**Commonality**.  Common questions of law and fact exist and predominate over any question affecting only individual Florida Class Members.  Fed. R. Civ.

P. 23(a)(2). Because the central issues in this case turn on the interpretation of policy form A-30FL – an insurance contract that is common to all Florida Class Members and Defendant – this case is especially well-suited to class adjudication. Defendant and all members of the Florida Class are bound by the same material terms of policy form A-30FL, and the central issues in the case all involve interpretation of the same material and controlling terms. The common questions include:

a.      Whether title fees are mandatory fees applicable to purchasing a vehicle;

b.      Whether license plate transfer fees are mandatory fees applicable to purchasing a vehicle;

c.      Whether "replacement cost for an auto" includes title fees;

d.      Whether "replacement cost for an auto" includes license plate transfer fees;

e.      Whether Defendant is required under the policy form A-30-FL to pay title fees to first-party total loss claimants;

f.      Whether Defendant is required under the policy form A-30-FL to pay license plate transfer fees to first-party total loss claimants;

g.      Whether Defendant breached its contractual duties under the policy form A-30-FL to pay title fees to first-party total loss claimants; and

h.      Whether Defendant breached its contractual duties under the policy form A-30-FL to pay license plate transfer fees to first-party total loss claimants.

82.

**Typicality**. Plaintiff's claims and defenses are typical of the claims of the Florida Class. Fed. R. Civ. P. 23(a)(3). Plaintiff and Florida Class Members were injured through GEICO Indemnity's uniform misconduct and their legal claims arise from the same core GEICO Indemnity practices, namely, the failure to pay full ACV, including title fees and license plate transfer fees, for first-party total loss claims under PPA physical damage policies issued under Form A-30FL. Plaintiff's claims are based upon the same legal theories as those of the Florida Class Members. The Plaintiff suffered the same harm as all the other Florida Class Members: the cost of title fees and license plate transfer fees that Defendant failed to pay its insureds.

83.

**Adequacy**. Plaintiff is an adequate representative of the proposed class because his interests do not conflict with the interests of the Florida Class

Members he seeks to represent, and Plaintiff will fairly and adequately protect the interests of the Florida Class. Fed. R. Civ. P. 23(a)(4). Plaintiff's counsel are experienced in litigating consumer class actions and complex disputes, and have specific experience successfully litigating similar disputes as class counsel. Plaintiff's counsel do not have any conflict with the interests of the class.

84.

**Superiority**. A class action is superior to all other available methods of fairly and efficiently adjudicating this dispute. The injury sustained by each Florida Class Member, while meaningful on an individual basis, is not of such magnitude that it is economically feasible to prosecute individual actions against GEICO Indemnity. Even if it were economically feasible, requiring hundreds of thousands of injured plaintiffs to file individual suits would impose an undue burden on the court system and almost certainly lead to inconsistent judgments. By contrast, class treatment will present far fewer management difficulties and provide the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

**Fed. R. Civ. P. 23(b)(1).**

85.

Plaintiff's claims are maintainable on behalf of the Florida Class pursuant

to Federal Rule of Civil Procedure 23(b)(1) because the prosecution of separate claims or defenses by or against individual Florida Class Members would create a risk of: (A) inconsistent or varying adjudications with respect to individual Florida Class Members that would establish incompatible standards of conduct for the party opposing the Class; and (B) adjudications with respect to individual Florida Class Members that, as a practical matter, would be dispositive of the interests of other Florida Class Members who are not parties to the adjudications, or would substantially impair or impede their ability to protect their interests.

86.

The relevant policy provisions for each Florida Class Member are the same. The relevant law relating to the interpretation and application of those policy provisions for each Florida Class Member is the same. There is the potential for inconsistent or varying adjudications concerning individual Florida Class Members, without a single adjudication as to the application of relevant law to the relevant policy provisions, different courts may reach different conclusions relating to the same legal and factual issues.

87.

Allowing the issues to be adjudicated in a piecemeal fashion likely would result in certain Florida Class Members who are not parties to individual

- 38 -

adjudications having their rights impaired or impeded without notice or adequate representation.

**Fed. R. Civ. P. 23(b)(2).**

88.

Plaintiff's claims also are maintainable on behalf of the Florida Class pursuant to Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and refused to act, on grounds that apply generally to all the Florida Class Members, thereby making final injunctive relief and declaratory judgment appropriate with respect to the Florida Class as a whole. Defendant has created and implemented a uniform claims handling practice based on policy language that is applicable to all Florida Class Members. Defendant's practice of failing to pay full ACV, including title fees and license plate transfer fees, for first-party total loss claims under PPA physical damage policies issued under Form A-30 applies generally to all Florida Class Members and is ongoing. Declaratory judgment regarding this practice, and injunctive relief to stop this practice, is appropriate.

**Fed. R. Civ. P. 23(b)(3).**

89.

There are questions of law and fact common to the Florida Class that under

- 39 -

Fed. R. Civ P. 23(b)(3) predominate over any questions solely affecting individual members of the Florida Class, including but not limited to those common questions of law and fact identified in paragraph 81(a-h). A class action is superior to other available methods for fairly and efficiently adjudicating the controversy for the reasons identified in paragraph 84.

### Fed. R. Civ. P. 23(c)(4).

90.

Particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to, the same issues identified in paragraph 81(a-h).

## VII.  COUNTS

### Count 1 – Breach of Contract
### (on behalf of the Nationwide Class and the Florida Class)

91.

Plaintiff incorporates by reference all allegations of all prior paragraphs as though fully set forth herein.

92.

This Count is brought by Plaintiff on behalf of the Nationwide Class and

the Florida Class.

93.

Plaintiff was a party to an insurance contract with Defendant.

94.

Each Nationwide Class Member and each Florida Class Member was a party to PPA insurance contract with Defendant under Policy Form A-30 (in Florida, policy form A-30FL (03-11)), or a policy form with material terms identical to Policy Form A-30.

95.

The material provisions of Policy Form A-30, as outlined above, are identical for Plaintiff and all Nationwide and Florida Class Members.

96.

The interpretation of all such insurance contracts is governed by common law.

97.

Plaintiff and each Nationwide and Florida Class Member made a claim determined by Defendant to be a first-party total loss under their insurance contract, and determined by Defendant to be a covered claim.

98.

Defendant, by paying on the total loss claim, determined that each Plaintiff and each Nationwide and Florida Class Member complied with the terms of their insurance contracts and fulfilled all of their duties that the insurance contracts imposed for them to be paid on their total loss.

99.

Plaintiff and each Nationwide and Florida Class Member's insurance contract required Defendant to pay full ACV, including title fees and license plate transfer fees.

100.

Upon information and belief, Defendant refused to pay Plaintiff's and each Nationwide and Florida Class Member's full ACV, including title fees and license plate transfer fees, and in so doing Defendant breached its insurance contracts with Plaintiff and each Nationwide and Florida Class Member.

101.

Plaintiff and the Nationwide and Florida Class Members have suffered monetary damage because Defendant has refused to pay and willfully withheld

the full amount of ACV, including title fees and license plate transfer fees, as described above.

### Count 2 – Declaratory Judgment and Injunctive Relief
### (on behalf of the Nationwide Class and the Florida Class)

102.

Plaintiff incorporates by reference all allegations of all prior paragraphs as though fully set forth herein.

103.

This Count is brought by Plaintiff individually and on behalf of the Nationwide and Florida Classes.

104.

Upon information and belief, Defendant has a practice and policy of breaching its insurance contracts with Plaintiff and Nationwide and Florida Class Members relating to the payment of full ACV, including title fees and license plate transfer fees, on PPA physical damage insurance policies issued under Form

A-30 (including Florida's form policy A-30FL (03-11)) for first-party total loss claims.

105.

Plaintiff and the Nationwide and Florida Class Members have been harmed by Defendant's refusal to pay full ACV, including title fees and license plate transfer fees, under their insurance contracts.

106.

Defendant has acted and refused to act relating to payment of the ACV, including title fees and license plate transfer fees, on grounds that apply generally to the Nationwide and Florida Classes, so that final injunctive relief or corresponding declaratory relief is appropriate with respect to the Classes as a whole.

107.

Plaintiff and the Nationwide and Florida Class Members are entitled to declaratory judgment that Form A-30 (including Florida's policy form A-30FL (03-11)) requires Defendant to pay the full ACV, including title fees and license plate transfer fees.

108.

There is a bona fide, actual, present, and practical need for the declaration sought because Defendant's illegal conduct has harmed Plaintiff and Nationwide and Florida Class Members, and will continue to harm other insureds who in the future will not receive full ACV, including title fees and license plate transfer fees, as required by their insurance contracts.

109.

The requested declaration deals with a present, ascertained, and ascertainable state of facts and a present controversy relating to Defendant's practices of refusing to pay ACV, including title fees and license plate transfer fees, on PPA physical damage policies for total loss vehicles.

110.

The rights of Plaintiff, Nationwide and Florida Class Members, and other insureds (who will suffer future total losses or whose total loss claims are presently being adjusted) depend on the law applicable to the facts of this case.

111.

Defendant has an adverse interest in the subject matter of this lawsuit in fact and law.

112.

All interested entities are before the Court by proper process and class representation and the relief sought is not merely giving legal advice by the courts or the answer to questions propounded from curiosity.

### Count 3 –Attorneys' Fees
### (on behalf of the Florida Class)

113.

Plaintiff incorporates by reference all allegations of all prior paragraphs as though fully set forth herein.

114.

Upon the rendition of a judgment or decree by this Court against Defendant and in favor of Plaintiff and/or Florida Class Members, applicable law (including Fla. Stat. Ann. § 627.428) requires that this Court shall adjudge or decree against Defendant and in favor of Plaintiff and/or Florida Class Members a reasonable

sum as fees or compensation for their attorneys prosecuting the suit in which the recovery is had.[13]

115.

Such compensation or fees of the attorneys shall be included in the judgment or decree rendered in the case. *See, e.g.,* FSA § 627.428(3).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Nationwide and Florida Classes, prays for relief and judgment as follows:

A.      For an order certifying this action as a class action on behalf of the Nationwide and Florida Classes described above;

B.      For restitution of all amounts wrongfully taken and/or withheld from Plaintiff and Nationwide and Florida Class Members;

C.      For injunctive relief to prevent continuation of this illegal practice by Defendant, and for other injunctive relief as is proven appropriate in this matter;

D.      For damages according to proof;

---

[13] *See e.g., All Underwriters v. Weisberg,* 222 F.3d 1309, 1315 (11th Cir. 2000), *cert. denied.* 531 U.S. 1061 (2000) (holding that FSA § 627.428 is substantive law for purposes of *Erie* and awarding attorneys' fees pursuant to that provision).

E.    For a declaration that Defendant is required under policies issued pursuant to Policy Form A-30 (including Florida policy form A-30FL (03-11)) to pay ACV, including title fees and license plate transfer fees, without precondition that the insured purchase a replacement vehicle and pay sales tax on the replacement vehicle;

F.    For an award of attorneys' fees as appropriate pursuant to applicable law (including FSA § 627.428);

G.    For costs of suit herein incurred;

H.    For both pre- and post-judgment interest on any amounts awarded; and

I.    For such other and further relief as the Court may deem proper.

Dated this 5th day of October, 2017.

Tracy L. Markham
Florida Bar No. 0040126
Avolio & Hanlon, P.C.
2800 N 5th Street, Suite 302
St. Augustine, Florida 32084
Phone: (904) 794 7005
Facsimile: (904) 794 7007
tlmarkhamlaw@gmail.com

*Trial Counsel*

Andrew Lampros
Georgia Bar No. 432328

- 48 -

Motion to Appear Pro Hac Vice to be filed
Hall & Lampros, LLP
1230 Peachtree Street, NE, Suite 950
Atlanta, GA 30309
Phone: (404) 876-8100
Facsimile: (404) 876-3477
alampros@hallandlampros.com


Bradley W. Pratt
Georgia Bar No. 586672
Florida Bar No. 0094300
Motion to Appear Pro Hac Vice to be filed
Pratt Clay, LLC
4401 Northside Parkway, Suite 520
Atlanta, Georgia 30327
Phone:  (404) 949-8118
Facsimile:  (404) 410-0563
bradley@prattclay.com


*Counsel for Plaintiff*